DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Venable Vermont, Jr.
Assistant Attorney General
Office of the Attorney General
1031 W. 4th Ave., Suite 200
Anchorage, Alaska  99501
Telephone: (907) 269-5190
Fax: (907) 258-0760
Email: TWC_EFC@law.state.ak.us

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAMUEL KEVIN CARTER, ) | |
| ) | |
| Plaintiff, ) | Case No.: 4:05-cv-0016-RRB |
| ) | |
| v. ) | |
| ) | **DEFENDANTS O'MALLEY'S** |
| OFFICER JAMES O'MALLEY, and ) | **AND WIDMIER'S OPPOSITION** |
| OFFICER TEAGUE WIDMIER, ) | **TO CARTER'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| Defendants. ) | |
| ) | |

This is a 42 U.S.C. § 1983 case in which the plaintiff Samuel Carter has sued two police officers – Fairbanks Police Department Officer James O'Malley and Alaska State Trooper Teague Widmier – after his conviction was reversed by the Alaska Court of Appeals in *Carter v. State*.[1] Carter has moved for summary judgment, arguing that *Carter* establishes the facts by way of *res judicata* and collateral estoppel, and seeking to overcome several

---

[1] 72 P.3d 1256 (Alaska App. 2003).

affirmative defenses listed in the officers' answer.[2] Defendants O'Malley and Widmier ("the officers") now file this opposition to Carter's motion for summary judgment. The officers abandon any reliance upon 1) failure to state to a claim upon which relief may be granted and 2) statute of limitations; this opposition focuses on qualified immunity. Carter's motion for summary judgment must fail because *Carter* does not establish facts against the officers for purposes of this proceeding; ample case law prohibits Carter from offensive use of collateral estoppel (or "issue preclusion") in a § 1983 action where the officers were only witnesses in the earlier state criminal prosecution, had interests separate from the state, and did not control the earlier criminal proceedings. In addition, the officers are entitled to qualified immunity because the facts here do not establish that a constitutional violation occurred, and even if they do, the law was not clearly established at the time and the officers acted reasonably in believing they had consent of the Comfort Inn management not only to search the room after the check-out time but to remove any non-registered guests. This latter point will not be developed here – it is addressed fully in the officers' motion for summary judgment, which is being filed concurrently with this opposition. The facts and arguments presented there are hereby incorporated by reference.

---

[2] Counsel for the officers is not counsel for the Fairbanks City Police Department, and cannot even say whether the Fairbanks City Police Department has been served or is an active party in the case. Counsel is unaware of any court order allowing Carter to amend his complaint to add the Fairbanks City Police Department as a defendant; consequently no issues relating to the Fairbanks City Police Department are addressed in this opposition. Unlike Carter, the defendants have not included the Fairbanks City Police Department in their caption.

## ARGUMENT: CARTER'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Carter begins his motion for summary judgment on the officers' request for qualified immunity by alluding to the proper test.[3] The initial inquiry is whether or not the officers' conduct has violated a constitutional right, and if so, the second inquiry is whether the right was clearly established.[4] To show a violation of his Fourth Amendment rights, Carter uses *res judicata* and collateral estoppel offensively, and argues that *Carter v. State* establishes the violation and cannot be questioned here.[5] To show that the law was "clearly established" at the time of the violation, Carter argues that prior case law establishes that "absent consent or exigency, a warrantless search of the home is presumptively unconstitutional" and that a hotel room is the same as a home for Fourth Amendment purposes.[6] But Carter's arguments fail. First, federal law does not allow offensive use of *res judicata* or collateral estoppel in this context. Carter cannot use the reversal of his state criminal conviction and the suppression of evidence against him on the basis of a Fourth Amendment violation to establish in this civil suit a constitutional violation for purposes of recovering money damages from the officers in their personal capacity. This is so because

---

[3] Carter's MSJ, at 3.

[4] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[5] Carter's MSJ at 3.

[6] Carter's MSJ at 3 (citing *Payton v. New York*, 445 U.S. 573 (1980) and *Stoner v. California*, 376 U.S. 483 (1964)).

the officers were not parties in the prior criminal proceeding, nor were they, under applicable state law preclusion rules, in privity with the state – they did not control the prosecution, they had separate interests in the outcome, they were not separately represented, and they did not have the opportunity to fully and fairly litigate their interests in the criminal case. Secondly, while Fourth Amendment rights apply to hotel rooms as well as to houses, Carter fails to demonstrate that the law was "clearly established" at the degree of particularity required by Supreme Court rulings on qualified immunity. He states the established law of the Fourth Amendment in terms too general to be of use in determining whether the officers' actions were within the penumbra of reasonableness encompassed in qualified immunity, even if they were mistaken. Carter's motion for summary judgment should be denied.

> **A**      **The Facts Are Not Established By *Carter* Because Federal Law Does Not Allow Offensive Use Of Collateral Estoppel Under These Circumstances**

Carter seeks to use collateral estoppel offensively against the officers. That is, he argues that *Carter v. State* establishes the facts and legal conclusions here and the officers cannot say otherwise. His approach should be rejected because the officers were not parties in the prior case – the state criminal prosecution – and were not in privity with the state. Use of the reversal in *Carter* to establish the facts and the law here would simply be unfair to the officers.

The first principle in preclusion attempts is that state preclusion rules apply to

the use of state court judgments.[7] In Alaska, *res judicata*, or claim preclusion, "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party…and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action."[8] Alaska uses the following test: "[A] final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[9]

On the other hand collateral estoppel, or issue preclusion "renders an issue of fact or law which has already been decided by a court of competent jurisdiction conclusive in a subsequent action between the same parties, whether on the same or a different claim."[10] To determine whether issue preclusion applies, Alaska courts ask whether:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action;
> (2) the issue precluded from re-litigation is identical to the issue decided in the first action;
> (3) the issue was resolved in the first action by a final judgment

---

[7] 28 U.S.C. § 1738 (full faith and credit statute); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (§ 1738 applies to claim preclusion as well as issue preclusion).

[8] *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003) (quoting MOORE'S FEDERAL PRACTICE § 131.10(1)(a) (3d ed. 1997)).

[9] *McElroy*, 74 P.3d at 906-07 (quoting *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997)).

[10] *McElroy*, 74 P.3d at 907 (citing *Restatement (Second) of Judgments* § 27 (1982)).

on the merits; and

(4) the determination of the issue was essential to the final judgment.[11]

Carter fails to draw the fine distinctions here, but it is primarily collateral estoppel or issue preclusion that he seeks to invoke. That is, he seeks to use an issue of law – the *Carter* finding of a Fourth Amendment violation – against the officers here, implicitly arguing that this is a subsequent action between the same parties. But the elements of issue preclusion as used in Alaska are not satisfied here, and thus *Carter* does not dictate either the facts or the conclusions of law in this lawsuit.

### 1. Party or in privity with a party

The officers were clearly not parties in the first action, which was a criminal prosecution against Carter by the State of Alaska.[12] Nor were they in privity with the state. "Privity" has no set definition; it is a "flexible concept" used to say that "the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."[13] In order to find privity, a court must determine that "the first action provided substantial protection of the rights and interests of the non-party."[14] This

---

[11] *McElroy*, 74 P.3d at 907 (quoting *Renwick v. State, Bd. of Marine Pilots*, 971 P.2d 631, 634 (Alaska 1999)).

[12] This should be clear enough from the public record. *See* Exhibit C, attached to the officers' motion for summary judgment, which is a copy of the opinion in *Carter v. State*.

[13] *Pennington v. Snow*, 471 P.2d 370, 375 (Alaska 1970) (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3rd Cir. 1950)).

[14] *Pennington*, 471 P.2d at 375.

determination is guided by due process concepts: the non-party must have notice and an opportunity to be heard; the procedure must protect the rights and interests of the non-party; and the non-party must in fact be adequately represented by the parties.[15] "The extent to which the interests of the non-party are identical to those of the parties of the action provides a gauge for the determination of the adequacy of representation."[16]

There was no privity between O'Malley and Widmier, on the one hand, and the state, on the other, in the criminal prosecution of Carter. They were witnesses, but they had no control of the litigation. Their interests were different from the state, which focused only on the prosecution of Carter and not on providing to the officers qualified immunity from a damages suit against them in their personal capacities. There was no "identity of interest" and therefore no representation, no protection of their rights, and no privity. This is the basis of the overwhelming rejection of collateral estoppel or issue preclusion in the same circumstances by most courts,[17] and should be here as well.

### 2.  Identity of issues

The issues in the two proceedings, the criminal prosecution of Carter and this § 1983 action against the officers, are different. While both cases are ostensibly about the Fourth Amendment, the real purpose of the criminal case was to attempt to convict Carter of

---

[15] *Id.*

[16] *Id.*

[17] *See* cases cited, *infra*, at n.21.

possession of drugs, within constitutional limits of course. The focus of this § 1983 litigation is whether the officers must pay damages to Carter or whether they are entitled to qualified immunity, which they may be even if there is a constitutional violation. The issues and the goals of the two cases are thus simply too different to allow issue preclusion.

### 3. Final judgment

*Carter v. State* was resolved by a "final judgment" in the form of the reversal by the Court of Appeals, and the dismissal of the criminal prosecution after remand. That is not contested.

### 4. Essential To The Final Judgment

The determination that there was a Fourth Amendment violation led to suppression of the evidence against Carter and ultimately to the final judgment. But there was no determination whatsoever concerning qualified immunity. Thus, no decision about qualified immunity was essential to the final judgment in the criminal prosecution. Carter's attempt to use issue preclusion offensively should be rejected.

To the extent that Carter attempts to use *res judicata*, or claim preclusion, against the officers the key is that the officers were, again, not parties and not in privity with the state. The reasoning is the same as above pertaining to issue preclusion.

The totality of these factors leads to but one conclusion: the court should reject Carter's attempt to apply collateral estoppel or *res judicata* against the officers.

Rejection of collateral estoppel or *res judicata* here would be consistent with

dicta from the Alaska Supreme Court in *Briggs v. State, Dep't of Public Safety, Div. of Motor Vehicles.*[18] The *Briggs* court decided that the state was collaterally estopped from re-litigating in a license revocation proceeding the issue of whether the state took reasonable steps to preserve a breath sample, where that issue had been resolved in the motorist's favor at a suppression hearing in a criminal proceeding.[19] The key to the holding in *Briggs* was that the Department of Public Safety in the revocation proceeding was in privity with the state in the criminal prosecution, because of the similarity of their interests. But in a footnote the Supreme Court found that collateral estoppel would not be appropriate under circumstances that are analogous to this case:

> The instant case is distinguishable from situations where the differing interests of the prosecutor and the administrative agency might justify a refusal to apply collateral estoppel. For example, this is unlike a case in which the defendant is seeking estoppel effect from a prosecutor's dismissal of charges or a stipulation of facts. There the prosecutor's decision to dismiss or to stipulate might reflect interests not shared by the administrative agency and thus should not be used against the agency, which was not entitled to appear at the criminal proceeding.[20]

That is exactly the situation here, where the officers' interests in defending against a lawsuit against them for damages in their personal capacity by obtaining qualified immunity are different from the prosecutor's interests in obtaining a conviction of Carter.

---

[18]   732 P.2d 1078.

[19]   *Id*. at 1081-82.

[20]   *Id*. at 103 n.9.

Rejection of Carter's attempt to preclude issues here would be consistent with case law from across the land.[21] It would also be consistent with the law in the Ninth Circuit. In *Davis v. Eide*,[22] the court examined circumstances virtually identical to those here: a former criminal defendant whose conviction was reversed on appeal brought a § 1983 action against police officers who had made a warrantless search and arrest in his hotel room.[23] The court rejected the plaintiff's attempt to apply collateral estoppel against the officers, finding that they were not in privity with the State of California in the criminal prosecution because they were not employed by the state, they had no control over the prosecution, and no direct individual personal interest in the outcome.[24]

---

[21] *Bilida v. McLeod*, 211 F.3d 166, 170 (1st Cir. 2000) (interests and incentives of officers different from those of state in a criminal case); *Tierney v. Davidson*, 133 F.3d 189 (2nd Cir. 1998) (refusing to give preclusive effect to state court suppression of evidence because issues in criminal case and § 1983 action were not identical); *McCoy v. Hernandez*, 203 F.3d 371 (5th Cir. 2000) (defendant officers in the § 1983 suit were not parties to criminal case and were not in privity with the state); *Foulks v. Dep't of Rehab. & Corrections*, 713 F.2d 1229 (6th Cir. 1983) (defendant officers were not parties to state criminal prosecution); *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996) (appellate finding of lack of probable cause for an arrest was not binding on defendant police officers in § 1983 suit; the officers were not party to the state criminal proceedings and did not have a full and fair opportunity to litigate the probable cause issue); *Duncan v. Clements*, 744 F.2d 48 (8th Cir. 1984) (police officer not a party nor in privity with the state which prosecuted the state criminal proceedings); *McFarland v. Childers*, 212 F.3d 1178 (10th Cir. 2000) (finding of lack of probable cause in affidavits submitted in state criminal court proceedings did not collaterally estop officer sued in individual capacity in § 1983 suit because he was not a party or in privity with the state in the criminal proceedings).

[22] 439 F.2d 1077 (9th Cir. 1971).

[23] *Id* at 1078.

[24] *Id*.

In a federal district court case in California, *Willis v. Mullins*,[25] Judge Ishii faced the same circumstances and concluded that *Eide* was still valid law, despite its age, because its reasoning was consistent with California's privity standards.[26] Plaintiffs had their convictions overturned on appeal and then brought a § 1983 action against several police officers who had searched their motel room and arrested them.[27] When they tried to use issue preclusion offensively against the defendants to establish the Fourth Amendment violations,[28] Judge Ishii applied California's issue preclusion standards, which are identical to Alaska's,[29] to reject the motion for summary judgment.[30] The key issue was privity.[31] Agreeing with Alaska that "there is no universally applicable definition of privity,"[32] the judge looked to various factors: community of interest, control, and prior case law. He found that the police officers did not share a sufficient community of interest with the criminal prosecution: while the officers aspired to enforce the law, they did not have a personal stake in ensuring

---

[25] Slip Copy, 2005 WL 3500771 (E.D.Cal.).

[26] Slip Copy at 8.

[27] Slip Copy at 1-2.

[28] Slip Copy at 2.

[29] *Compare*, Slip Copy 4-5 with *McElroy*, 74 P.3d at 907, cited *supra* at p. 5.

[30] Slip Copy at 9.

[31] Slip Copy at 5.

[32] Slip Copy at 6.

conviction, nor were their financial interests represented in the criminal prosecution.[33] They also did not control the criminal prosecution.[34] The court found that "being a witness for the prosecution does not create privity," and does not give police officers the authority to determine whether to prosecute.[35] And Judge Ishii found support in Ninth Circuit precedent, discussing *Eide*, as noted above, as well as federal cases across the land.[36]

There is no support in this record to show that these officers were in privity with the state. There is ample federal authority to reject Carter's attempts to establish the law and the facts by issue preclusion. This court can and should deny Carter's motion for summary judgment on this ground alone.

### B. Carter Has Failed To Show That The Law Was "Clearly Established" At The Relevant Degree Of Particularity

In its seminal qualified immunity decision, *Harlow v. Fitzgerald*,[37] the Supreme Court declared that whether or not qualified immunity would protect an official would turn on the "objective legal reasonableness" of the official's action, assessed in light of the legal

---

[33] Slip Copy at 7.

[34] Slip Copy at 8.

[35] *Id.*

[36] Slip Copy at 9.

[37] 457 U.S. 800 (1982).

rules that were "clearly established" at the time of the action.[38] In *Anderson v. Creighton*,[39] the Court recognized that merely stating the rule at a certain level of generality – e.g. "the right to due process is clearly established by the Due Process Clause" – would not assist in determining the "objective legal reasonableness" that is the "touchstone of *Harlow*."[40] At this level of generality, the "rule" gives no guidance to officials in the performance in their duties and no guidance to courts attempting to vindicate citizens' constitutional rights.[41] The Court tied the "clearly established" test to the reasonable official that *Harlow* was trying to protect:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent.[42]

Having explained the test, the Court then demonstrated its proper use by applying it to the facts in *Anderson*, which, like the present case, involved a warrantless

---

[38]   *Id*. at 818-19.

[39]   483 U.S. 635 (1987).

[40]   *Id*. at 639.

[41]   *Id*.

[42]   *Id*. at 640 (citations omitted).

search:

> The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed.[43]

The bottom line is that a court's inquiry concerning qualified immunity is thus objective, fact intensive, based on the information the officials possessed at the time, and conducted in light of clearly established principles.[44] Here, as in *Anderson,* the principles are those relevant to warrantless searches.

Carter's "clearly established" analysis thus fails. He posits only generalities: warrantless searches are unconstitutional; the Fourth Amendment applies to hotel rooms as well as to houses; I had a right to privacy while asleep in this hotel room.[45] This is not a sufficiently particular and thus relevant analysis under *Anderson*. A relevant analysis would turn on all the facts known to the officers at the time, such as the officers have performed in their concurrently filed motion for summary judgment. O'Malley knew that he had permission to search the room after check-out time; check-out time was one o'clock; it was after one o'clock; the rental had not been renewed, as it had been daily for the last three days; Carter was not a registered guest; and Judy had said "We don't want them in there." On the

---

[43]    *Id*. at 641.

[44]    *Id*.

[45]    Carter's MSJ at 3.

other hand, O'Malley did not know of Judy's telephone call with "Sam," her conversation with her manager, or anything about the hotel's policies on late renewals.[46]

Under these circumstances it was objectively reasonable for O'Malley to believe that he had permission from the Comfort Inn to direct Carter to leave, even if there was no actual permission or consent. After a full hearing with witnesses, Judge Greene agreed with him – certainly a good indication of the reasonableness of O'Malley's actions and beliefs. Because Carter has the burden of proving that the law was clearly established,[47] and he hasn't done that at the level of particularity required by Supreme Court decisions, this court should deny Carter's motion for summary judgment.

### C.  Carter's Procedural Representations Are Correct

Carter is correct that the Supreme Court has declared that the existence of immunity should be decided as early as possible in a particular case, and well in advance of trial.[48] He is also correct in asserting that the existence or not of qualified immunity is an issue for the court, not a jury.[49]

---

[46]   All of these facts and others are developed in the officers' motion for summary judgment, which is incorporated here by reference.

[47]   *Sweaney v. Ada County*, 119 F.3d 1385, 1388 (9th Cir. 1992) (plaintiff has initial burden of establishing that the rights allegedly violated were clearly established).

[48]   Carter's MSJ at 3 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

[49]   Carter's MSJ at 3 (citing *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985); *Cooper v. Dupnik*, 924 F.2d 1520, 1526 (9th Cir.) (qualified immunity is an issue of law reviewed on appeal de novo)).

## CONCLUSION

The qualified immunity issue is ripe for decision by the court and should be decided now. The court should deny Carter's motion for summary judgment, and should grant the officers' motion for summary judgment being filed concurrently.

DATED this 13th day of April, 2006 at Anchorage, Alaska.

>DAVID W. MÁRQUEZ
>ATTORNEY GENERAL
>
>By:   s/ Venable Vermont, Jr.
>   Assistant Attorney General
>   Office of the Attorney General
>   1031 W. 4th Ave., Ste. 200
>   Anchorage, AK 99501
>   Phone: (907) 269-5190
>   Fax:   (907) 258-0760
>   Venable_Vermont@law.state.ak.us
>   TWC_ECF@law.state.ak.us
>   Alaska Bar No. 8306067

This is to certify that on this date, a copy of the foregoing motion for summary judgment/exhibits is being mailed to:

Samuel Kevin Carter
c/o CCA-FCC
P.O. Box 6200
Florence, AZ  85232

s/ Venable Vermont, Jr. 4/13/06