```
 1   A      Yes.
 2   Q      Again, this was Room 231?
 3   A      Yes.
 4   Q      And it has "Adults, 2" on it, right?
 5   A      I didn't -- I just looked at the name of Christine
 6          Covington.  I didn't look at and study the whole
 7          card.
 8          MR. STEPOVICH:  If could approach the witness, Your
 9   Honor?
10          THE COURT:  You may.
11   Q      (By Mr. Stepovich)  (Indiscernible - off mike)
12   A      Okay.  I just looked at the name where it says
13          "Christine Covington" and that -- I didn't look at
14          the small print.
15   Q      Okay.
16   A      That's who they told me the room was registered to,
17          is Christine Covington.
18   Q      And I think -- well, when you called -- didn't the
19          front desk tell you that Carter was in the room?
20          MR. MATTERN:  Yeah.  Objection.  It's hearsay.
21          THE COURT:  Response.
22   Q      (By Mr. Stepovich)  Well, did you have any...
23          MR. STEPOVICH:  I'll strike that, Your Honor.
24          THE COURT:  Good.
25   Q      (By Mr. Stepovich)  Did you have any information from
```

State v Carter, 4FA-S01-0117 CR                Evidentiary Hearing
3-30-01                                                       - 19

Exhibit B
Page 8 of 14

```
 1            the hotel -- I mean, you had information.  Your
 2            testimony was because of a contact with Acquistapace
 3            the night before who informed your supervisor,
 4            Roberts, that Carter was there.....
 5   A        Correct.
 6   Q        .....or at least they -- I guess they had the
 7            Suburban and heard some voices -- didn't you confirm
 8            that -- did you ever confirm that with the front desk
 9            that, in fact, he was there that morning of the 9th?
10   A        I don't rem-- I believe I asked if they were still in
11            Room 231.  I don't recall if I specifically said, "Is
12            Sam Carter in Room 231?"  I asked if Room 231 was
13            still in and when they checked out.  Or when they
14            were going to check out.  I don't recall if I
15            specifically brought up Mr. Carter's name.  Once I
16            arrived there and I saw it was a Suburban, I knew he
17            was still there.
18   Q        Okay.  But you don't recall.....
19   A        I don't recall my exact conversation with Judy at the
20            front desk, no.
21   Q        Okay.  In your police report -- let's just look at
22            that real quick.  If you look at your -- do you have
23            your copy of your police report there?
24   A        Yes.
25            MR. STEPOVICH:  And mine's marked 46, at least as far
```

State v Carter, 4FA-S01-0117 CR          Evidentiary Hearing
3-30-01                                  Exhibit B    - 20
                                         Page 9 of 14

```
 1        there's something that can refresh your recollection
 2        as to when you would have designated the check-out
 3        time or the -- for Mr. Carter?
 4   A    Of doing -- of doing the last check-out, checking the
 5        room out?
 6   Q    Yes, please.
 7   A    It was after 1.
 8   Q    Okay.  And do you recall if -- this was -- of course,
 9        you're sitting at the front desk.  What you see is
10        people going by you, right, upstairs, downstairs?
11   A    (Inaudible response)
12        THE COURT:  You need to answer outloud.
13   A    Yes.
14   Q    (By Mr. Stepovich)  Okay.
15   A    I'm sorry.  Yes, sir.
16   Q    Did you see Mr. Carter go by?
17   A    No, I did not.
18   Q    Okay.  And it's not uncommon, is it, for a guest to
19        come in a few minutes after 1 and say, "I want to
20        stay another day"?
21   A    No, it's not uncommon.
22        (Defense counsel consult)
23   Q    (By Mr. Stepovich)  There was no direction on your
24        part as an employee of the hotel to check out people
25        in that room, was there, to the police?
```

State v Carter, 4FA-S01-0117 CR         Evidentiary Hearing
3-30-01                                              - 45

Exhibit B
Page 10 of 14

1    A    No, sir.

2    Q    Okay.

3        MR. STEPOVICH: Nothing further at this time. Thank

4 you for coming. And Mr. Mattern.....

5        THE COURT: Anything for cross examination, Mr.

6 Mattern?

7        MR. MATTERN: Thank you.

8                    **CROSS EXAMINATION**

9 **BY MR. MATTERN:**

10   Q    Who was the registered -- into Room 231 during that

11       time period?

12   A    It was Christine Covington.

13   Q    And was Sam Carter's name listed anywhere on any of

14       the registration documents?

15   A    I do not know on that. All -- all I know.....

16   Q    Could you review what you've got there and see if his

17       name appears anywhere on those documents?

18   A    Sir, I see on this one page here it has a Sam Carter

19       on the file here but it's not on our -- right here.

20   Q    It's not on your registration documents?

21   A    Right here. No, sir.

22   Q    Okay. That's (indiscernible - off mike).

23   A    It is not on there. That's the only thing that I

24       see.

25   Q    That's a search warrant, right? But I mean, your --

State v Carter, 4FA-S01-0117 CR        Evidentiary Hearing
3-30-01                                           - 46

Exhibit B

Page 11 of 14

| | |
|---|---|
| 1 | MR. MATTERN: Pass the witness back, Your Honor. |
| 2 | THE COURT: I'm a little confusedso... And I need to |
| 3 | have something cleared up, a couple of things cleared up. |
| 4 | **VOIR DIRE** |
| 5 | **BY THE COURT:** |
| 6 Q | When did your general manager talk to you about not |
| 7 | continuing the people who were in Room 231 there? |
| 8 A | Actually, when Mr. O'Malley --uh-- let's see.  Let me |
| 9 | just think for a second, Judge.  Uh-- Actually, when |
| 10 | the police officer had -- Mr. O'Malley, had called me |
| 11 | and --uh-- and asked me that -- who was in the room, |
| 12 | I said there was a Sue Covington and --uh-- --uh-- if |
| 13 | there were going to be -- actually... I don't know. |
| 14 | It's all in between the officer calling me, first of |
| 15 | all, and asked me who was in there and I said, "Sue |
| 16 | Covington."  And there could be other people in there |
| 17 | and he had called and said when are they due out, to |
| 18 | check out?  And I said, "They're due out at 1:00 |
| 19 | o'clock."  And --uh-- "Was there other people in |
| 20 | there?"  And I said, "Well, as far as I know -- I |
| 21 | don't know right now but I will call and see if |
| 22 | they're staying over or whatever."  And --uh-- that's |
| 23 | about all I could say right there. |
| 24 Q | Okay.  So what happened after that? |
| 25 A | So he had called me back and asked, you know, who was |

State v Carter, 4FA-S01-0117 CR          Evidentiary Hearing
3-30-01                                                 - 49

Exhibit B
Page 12 of 14

```
 1   officers obtained a search warrant and came back and
 2   searched the room and obtained all the evidence that is
 3   used to prosecute this case.
 4        For a plain view search, the police have to make the
 5   observation from a place they are entitled to be.  The
 6   discovery has to be inadvertent.  The incriminating nature
 7   of the object must be immediately apparent.  And it must be
 8   non-pretextural.  I don't think this was a pretext.  I
 9   don't see anyth-- any reason for that.  Clearly, the
10   officers didn't have to stay and could have left.  But they
11   hoped that they would be able to find something by Mr.
12   Carter giving consent along the way as they went about
13   their business.  They certainly had positioned themselves
14   in a place that they were likely to see anything that was
15   in plain view as he packed up.  And I'm somewhat concerned
16   about whether that makes it an inadvertent discovery.
17   However, on balance, given those historical facts, I find
18   that it is.  Certainly Mr. Carter did not have to open
19   anything.  He did not have to pack up anything.  And in
20   light of that, it seems to me that, on balance, it is
21   inadvertent.  The other significant question is whether or
22   not the police were in a place that they were entitled to
23   be.  They were not requested by the Comfort Inn to evict
24   Mr. Carter and, had Mr. Carter said earlier when he was
25   called that he had decided to stay another night, he would
```

State v Carter, 4FA-S01-0117 CR                Evidentiary Hearing
3-30-01                                                      - 64

Exhibit _B_
Page _13_ of _14_

```
 1  have still been the valid -- in valid possession of the
 2  apartment or -- not apartment -- hotel room despite the
 3  fact that he wasn't the registered guest.  However, at the
 4  point that they they are there after 1:00 o'clock, Mr.
 5  Carter hasn't done anything that would allow him to
 6  maintain control of the place.  He was not a registered
 7  guest and, in light of that, it seems to me that the
 8  officers had a right to be where they were.  That was --
 9  which was with the consent of the Comfort Inn to search the
10  place after the guests were no longer entitled to be there,
11  although -- and Mr. Carter had no right to be there after
12  1:00 o'clock, although he hadn't checked out.
13          As a result of that, I'll deny the motion to
14  suppress.
15          Thank you.  You may be excused.
16          THE CLERK:  Off record.
17          (Off record)
18  09:51:22
19                  **** END OF PROCEEDING ****
20
21
22
23
24
25
```

State v Carter, 4FA-S01-0117 CR          Evidentiary Hearing
3-30-01                                  Exhibit B      - 65
                                         Page 14 of 14