Sam K. Carter, Pro Se
c/o CCA-FCC
P.O. Box 6200
Florence, Arizona
85232

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAMUEL KEVIN CARTER,<br><br>         Plaintiff,<br><br>vs.<br><br>OFFICER JAMES O'MALLEY, and<br>OFFICER TEAGUE WIDMIER, and<br>FAIRBANKS CITY POLICE DEPARTMENT,<br><br>         Defendants. | Case No. F05-0016 CV (RRB)<br><br>PLAINTIFF CARTER'S OPPOSITION TO DEFENDANTS<br>MOTION FOR SUMMARY JUDGMENT BASED ON<br>QUALIFIED IMMUNITY |

   Plaintiff Samuel Carter now submits to the Court his opposition to defendants motion for summary judgment based on qualified immunity. Additionally, included is Carter's Excerpts of Record, page 2 thru 17 and 22 of his "Brief of Appellant", as well as Exhibit 000016 thru 000021, counsel's motion for reconsideration and affidavit.

I. Statement of the Facts.

   In response to a motion to suppress evidence, which was opposed by the State, an evidentiary hearing was conducted on March 30, 2001.

   Fairbanks Police Officer James O'Malley, assigned to the Statewide Drug Enforcement Unit, testified that on January 9, 2001 he received information that Sam Carter nad Amy Fain were occupying a room at the Comfort Inn in Fairbanks. Speculating that drug activity may be taking place O'Malley contacted the Comfort Inn and spoke to a person named Judy who confirmed that Carter and Amy Fain still occupied the room. He secured an agreement that when they had checked out, the room would remain untouched in order for police to conduct a search. He was advised that checkout time was 1:00 PM.

   O'Malley contacted Investigator Widmier and decided to conduct surveillance of the hotel, arriving at approximately 12:30 PM. While there, an Alaska State Trooper vehicle with uniformed officers arrived to arrest Amy Fain on a criminal complaint. O'Malley

and Widmier contacted a uniformed officer to determine his intentions indicationg that they were waiting for Amy Fain and Sam Carter to check out. After waiting for additional uniformed officers O'Malley and Widmier proceeded to the room, after stopping at the front desk, and encountered Pam Fain, the mother of Amy Fain who was returning to the room. Officer O'Malley testified that it was at least 1:00 PM when he came back from the front desk where he had gone to secure entry into the room, and at that time entry had already been made into the room. O'Malley conceded that entry had been made into the room before 1:00 PM by three uniformed officers and Widmier. When O'Malley entered the room Pam Fain and Amy Fain were present as well as a young child. Mr. Carter was in bed covered with a jacket. Uniformed officers arrested Amy Fain. O'Malley ordered Carter to leave the room having ascertained that arrangements had not been made to rent the room for another night.

Significantly, no one from the hotel had asked O'Malley to clear the room. Widmier confirmed he and O'Malley intended to search the room after it had been vacated.

O'Malley and Widmier allowed Sam Carter to dress after his clothing was searched. Sam Carter inquired if the police had a warrant, was advised that they had not, but was given the choice of leaving without clothing or possessions or consenting to search of those items prior to being forced to leave.

While in the process of evicting Sam Carter from the room, Widmier observed drug paraphernalia in a drawer of a nightstand. O'Malley testified that he observed Sam Carter reach in the nightstand and grab property that upon forcibly being removed from his hand proved to be several gold rings and a plastic vial with a red cap containing what O'Malley observed to be white residue in it.

O'Malley and Widmier then secured the room and allowed Sam Carter to leave with the clothing he was wearing and a baseball hat and jacket after it was searched.

Though O'Malley and Widmier fully intended to search the room and forced Carter to leave in order to do so, they testified that they would not have observed either the drug paraphernalia or vial with residue in it if it had not been exposed to them by Carter. O'Malley testified that he does not routinely tell people when to check out of

a hotel room, and further <u>that he did not have management authority to remove Mr. Carter from his possession of his room.</u> (Excerpt p-6) emphasis added.

Officer O'Malley conceded he did not have probable cause to arrest Sam Carter. O'Malley candidly indicated that Sam Carter was allowed to leave with only his pants, shoes, hat and perhaps jacket. When asked by the court why O'Malley and Widmier did not leave the room to allow Carter to pack up his things and leave, the offficer responded clearly that he hoped to secure evidence of drug use, ostensibly secure permission or consent to search if something suspicious was encountered, all the while removing Carter from the room.

Officer Widmier testified that he was working with O'Malley and they were conducting surveillance of the Comfort Inn on January 9, 2001 from approximately 10:00 or 10:30 AM. Widmier testified that the only reason he and O'Malley continued to occupy the room was to make sure Carter was going to leave. Widmier testified that Sam Carter was lying on the bed sleeping when he entered the room. <u>Widmier testified that after Amy Fain was arrested and removed, he and O'Malley had no legitimate reason to be in the room having no request or authority from the management of the Comfort Inn to remove him.</u> (Exc.p-7)

The state rested, and the defense called Judith D. Tonkovich, the clerk-cashier at the Comfort Inn on January 9, 2001.

Ms. Tonkovich testified that Sam Carter was a guest at the hotel on January 9, 2001. <u>Ms. Tonkovich confirmed that there was never any direction by her to remove anyone from the room occupied by Sam Carter,</u> and that it was not uncommon for people to extend their stay after checkout. (Exc. p-7) emphasis added. <u>On examination by the court, Ms. Tonkovich testified that she never indicated to Officer O'Malley or anyone in the room that they had to be out by 1:00 PM.</u> Id. emphasis added.

The record is clear that Sam Carter was staying at the Comfort Inn with full permission of the management and in fact had the right to extend his stay, as he had done in the past, at the time he was forced from his room and his belongings searched.

The trial court's misplaced reliance on Mr. Carter being in his room after 1:00 PM was the basis for a motion for reconsideration and the filing of an exhibit that

-3-

established that it was before 1:00 PM when O'Malley and Widmier ordered Carter to leave his room.

The state apparently sought to rely on the consent of hotel management, consent of Mr. Carter, or plain view to justify its search. There is no factual basis supporting any of these exigencies. Any reliance by the state on consent as an exigent circumstance justifying deviation from the warrant requirement is misplaced both factually and legally in this case. There simply cannot be consent to search when police instructed Carter to leave a room he had a legal right to occupy. It is critical to note, and it is undisputed, that any consent by hotel management given in this case was conditioned, as it had to be, upon the occupants having vacated the room. The trial court's acceptance of this condition having been met, based on the police evicting Sam Carter from a room where he had a right to be, is simply an extreme exercise in judicial tunnel vision.

The trial courts conclusion that Sam Carter's consent ultimately lead to plain view of contraband ignores the fact that Carter was being forced to leave a room he lawfully occupied. It is patently coercive when police solicit an alleged voluntary consent in order to allow Carter to get dressed prior to being forced out of his hotel room.

The court found significance in the fact that it was after checkout time when O'Malley and Widmier were in the room securing purported voluntary consent from Sam Carter in order that he could dress before being forced from the room.

The courts conclusion as to the time are clearly mistaken as Officer Olson's testimony establishes that Amy Fain had been removed from the room and was in fact in the patrol vehicle prior to 12:55 PM. (Exc. p-16) emphasis added.

When Officer O'Malley erroneously testified at the evidentiary hearing that it was after 1:00 PM when he instructed Sam Carter to vacate the room, it was proper for Carter's counsel to submit evidence of the actual time with a motion for reconsideration.(Exc.p-17)

The record is uncontradicted that police had no authority to remove Sam Carter, had no request to do so from the management of the hotel, and that Sam Carter had routinely extended his stay at the hotel by contacting and paying the management. The trial court accepted as appropriate, the promise to allow police to search the room after it had

-4-

been vacated as authority to force Mr. Carter to vacate. This is error.

II. Argument.

It is undisputed that the defendants were conducting surveillance of the Comfort Inn and that Sam Carter was the primary reason and focus of their investigation. As evidenced by the actions of Officer O'Malley, the law was clearly established at the time of the event because he knew that without valid consent from Carter, probable cause or a warrant, he could not enter Carter's hotel room legally. This is so because he went to hotel management seeking an agreement where the room would remain untouched by cleaning staff so police could effect a search of Carter's room.

O'Malley was told by the hotel clerk (Judith Tonkovich) that he could search the room after the guests had vacated and that checkout was 1:00 PM.

It is clear O'Malley and Widmier's intent from the start of their arrival at the Comfort Inn was to investigate Carter and gain access to his room if possible. This possibility was afforded them by the arrival of uniformed officers, who were there to arrest Amy Fain on a criminal complaint. As a pretext to illegally seize Carter's room they entered with the uniformed officers to render aid and assist in the arrest of Amy Fain. O'Malley relies on superior court findings of fact here when he says it was now past 1:00 PM when "I told Carter to gather up his things and vacate the room." See Exh. A, p-4, paragraph 11-12. He erroneously states that Judy, the hotel clerk told him, "we want them out of there." Id. Clearly, from the record, Carter has shown these facts to be unfounded, as evidenced by his excerpts of record.

1) Widmier and uniformed officers gained access to Carter's room at approximately 12:45 PM to arrest Amy Fain.

2) Trooper Olson's tape recording indicates Amy Fain was removed from the room by approximately 12:50 PM. (Exc.p-22)

3) At the time O'Malley ordered Carter to pack up his things and leave, it could not have been past 1:00 PM as Trooper Olson's tape clearly shows.

4) Carter and his room had been illegally seized by O'Malley and Widmier at the time they ordered Carter to vacate as found by the Ak. Ct. of Appeals.

-5-

5) There were no drugs or evidence of crime in plain view at the time the defendants ordered Carter to vacate his room.

6) Nobody authorized or gave permission to either O'Malley or Widmier to remove Carter from his possession of the room.

7) Carter inquired if the officers had a warrant and was told no that they did not have one.

8) Coming from men in positions of authority, Carter felt he was ordered to vacate and had no alternative but to leave.

9) Carter's failure to object to the command to vacate does not imply consent to search. See US v Shaibu 920 F.2d 1428 (9th Cir.)

It is overwhelmingly clear that the defendants exceeded their lawful scope and authority in this case.

III. The Facts Do Not Warrant Qualified Immunity.

A. Objective Reasonableness of O'Malley's actions.

O'Malley's decision to seize and search Carter's hotel room was a "discretionary act" which are "those requiring personal deliberation, decision and judgment." "An officer performing a discretionary act is protected by qualified immunity if a reasonable officer could have believed the challenged conduct was lawful in light of clearly established law and facts of the case." Crawford v Druenkar, 2004 Ak. Lx. 111, p-26 Hn 11.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.

"A warrantless, nonconsensual entry and search of a private residence is presumptively unreasonable in the absence of probable cause and exigent circumstances." See Welsh v Wisconsin 104 S. Ct. 2091 (1984).

"These protections extend to cover the rights of citizens in hotel rooms." See Stoner v California 84 S. Ct. 889 (1964)

In considering whether or not exigent circumstances exist a court will use the following factors to evaluate events:

1) that a grave offense is involved, particularly a crime of violence.

2) the suspect is reasonably believed to be armed.

3) a clear showing of probable cause.

4) a strong reason to believe that the suspect is in the dwelling.

5) the likelihood of escape if not swiftly apprehended.

6) a peaceable entry as opposed to a breaking.

7) the time of entry, night or day.

After being granted permission to search room 231 after it had been vacated by the occupants, O'Malley was informed that checkout time was 1:00 PM. So therefore it is reasonable to conclude that the demarcation line or focal point regarding the timeline in which events occurred, would be 1:00 PM in the mind of a reasonable officer in similar circumstances. Without question a reasonable officer would have assisted fellow officers who arrived on scene to arrest a third party in the room. However, a reasonable offficer would have been very mindful of the time at the point of the third party, (Amy Fain) being removed from the room.

As O'Malley points out in his affidavit and as Trooper Olson's tape confirms, the defendants entered Carter's room at approximately 12:45 PM, a full 15 minutes before checkout time. After the arrest of Amy Fain had been completed and her removal from the room, which was the primary task given by the defendants, a reasonable officer would have immediately known with the flick of the wrist that it was before checkout time, (12:50), and therefore understand that his authority to be in the room terminated with the removal of Amy Fain.

As both O'Malley and Widmier admit, Carter was lying on a bed, covered with a jacket sleeping. Trooper Olson testified when he entered the room to arrest Amy Fain, there were no drugs or evidence of crime in plain view.

There were no exigent circumstances in the room which required O'Malley and Widmier to deviate from the warrant requirement, such as substantial risk of harm to the persons involved or to law enforcement. U.S. v McConney 728 F.2d 1195,1199 (9th Cir.)

A reasonable officer in light of the previously mentioned facts would have known that

his authority to be in the room expired with the removal of Amy Fain and because no probable cause existed as admitted by the defendants, would have exited the room to await the 1:00 PM checkout time.

The defendants state "all the facts did not come out in the trial court". See p-18 Def. MSJ. They cannot now argue something that is not part of the judicial record. They cannot now manufacture facts to support their claims of quaalified immunity.

After the defense examined Judy Tonkovich under oath, she categorically denied giving anybody permission to evict Carter from room 231. The only consent she gave was permission to search Carter's room after he vacated, meaning after he decided he no longer wanted to rent the room again.

As the Alaska Court of Appeals found, O'Malley and Widmier decided to speed up the process of Carter vacating the premises by ordering him to leave, because the permission granted them, hinged on Carter leaving at 1:00 PM. A reasonable officer would not have munipulated events to unfold in their favor at the expense of a citizen's rights.

Lastly, the defendants place emphasis on Carter not renewing his rental of the room as reason to evict him. This line of thinking is untenable when one considers that the defendants had seized Carter's room and had given him orders to vacate thereby making an opportunity to renew his rental agreement nonexistent. A reasonable officer would not have remained in the room given the time, (12:50), that O'Malley ordered Carter to vacate. Indeed, the opportunity afforded O'Malley and Widmier to observe drug paraphernalia or evidence of crime in plain view was manufactured by they themselves.

IV. Conclusion.

"A dispute over a genuine material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party." See Anderson v Liberty Lobby, Inc., 477 U.S. 242,248 (1986)

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise proper motion for summary judgment; the requirement is that there be no geniune issue of material fact." Id. at 247-48.

Black's Law Dictionary defines material fact as: "a fact that is significant or

essential to the issue or matter at hand."

The excerpts of record submitted by Carter clearly show the facts relied on by the defendants are erroneous. Not only was O'Malley's rendering of the facts refuted by the clerk-cashier's sworn testimony, it was also shown to be erroneous by Trooper Olson's tape recording of the event. Clearly, there is a geniune issue of material fact in dispute. A resonable fact-finder would return a verdict for Carter.

The defendants burden of meeting the requirement for summary judgment has not been met. These facts do not warrant qualified immunity and the defendant's motion for summary judgment should be denied.

The Alaska Court of Appeals ruled the officers observation of evidence in plain view was the fruit of their unlawful presence in Carter's room and as a result of their unlawful demand for Carter to vacate and relinquish his possession of the room. See Carter v State 72 P.3d 1256, 1278 (Ct. App. Ak. 2003). This Court should CONCURR. This Court should find Carter's civil rights were violated.

DATED and SUBMITTED this 23 day of May, 2006, at Florence, Arizona.

/s/ Samuel K. Carter
Samuel K. Carter

This is to certify that on this date,
a copy of the foregoing Plaintiff's
Opposition to Defendants Motion for
Summary Judgment is being mailed to:

Venable Vermont Jr.
Office of the Attorney General
1031 W. 4th Ave., Suite 200
Anchorage, Alaska
99501

/s/ Sam K. Carter
Sam K. Carter